# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**GRETCHEN S.,**[1]

               Plaintiff,

   v.

**ANDREW M. SAUL,** Commissioner of
Social Security,

             Defendant.

Case No. 6:19-cv-01842-IM

**OPINION AND ORDER**

Tim Wilborn, Wilborn Law Office, P.C., P.O. Box 370578, Las Vegas, Nevada 89137. Attorney
for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Civil Chief, United States
Attorney's Office, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Jacob Phillips,
Special Assistant United States Attorney, Office of General Counsel, Social Security
Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, Washington 98104. Attorneys
for Defendant.

**IMMERGUT, District Judge**

      Plaintiff, Gretchen S., seeks review of a final decision of the Commissioner of Social

Security ("Commissioner" or "Defendant") denying her application for Social Security Disability

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

PAGE 1 – OPINION AND ORDER

Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423. As expressed in this opinion, this Court affirms the Commissioner's decision because the Administrative Law Judge's ("ALJ") decision was backed by substantial evidence and is free from harmful legal error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born on May 28, 1970, and was 47 years old on the alleged disability onset date, September 6, 2017. AR 24. Plaintiff has at least a high school education, *id.*, and has worked in the past in marketing and sales. Plaintiff also owned and ran her own business for several years. AR 778.

Plaintiff's alleged disability onset date is September 6, 2017. AR 152. Plaintiff suffers from multiple sclerosis (Marburg's variant). AR 17, 778. After her onset date, she "quickly became much worse and was hospitalized for over a month." AR 778. Though "her condition continues to be improved" with treatment, Plaintiff has lasting effects of MS. AR 778–79. Plaintiff filed her application for benefits on August 24, 2018. AR 152.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

§§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140–41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023. AR 17.

At the first step of the disability analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 6, 2017, the alleged onset date. *Id.*; *see also* 20 C.F.R. § 404.1571 *et seq*.

At step two, the ALJ found the following severe impairment: multiple sclerosis (Marburg's variant). 20 C.F.R. § 404.1520(c). This impairment significantly limits the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28. AR 17.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 19. The ALJ found that Plaintiff "has the residual functional capacity to perform light exertion work with lifting and carrying up to 20 pounds

occasionally and 10 pounds frequently, standing and walking four hours of an eight-hour workday, and sitting six hours of an eight-hour workday. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. [She] can occasionally balance, stoop, kneel, crouch, and crawl." AR 20.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work "as a leasing agent, customer complaint clerk, and, in combination, controller/personnel manager." AR 23.

Although this finding at step four means that the ALJ is not required to make a finding at step five, the ALJ made "alternative findings for step five." AR 24. He concluded that given Plaintiff's age, education, work experience, and residual functional capacity, she can perform other jobs existing in significant numbers in the national economy. *Id.* Accordingly, the ALJ found that Plaintiff was "not disabled" from September 6, 2017, through the date of his decision, March 18, 2020. AR 25.

**DISCUSSION**

Plaintiff asserts that the ALJ's findings at step four and step five of the sequential analysis "are not supported by substantial evidence." ECF 8 at 13. Regarding step four, the past relevant work determination, Plaintiff argues that the ALJ "improperly rejected the medical evidence, improperly rejected Plaintiff's testimony, and improperly rejected the lay witness testimony." *Id.* At step five, the "other jobs" determination, Plaintiff argues that the vocational expert's "testimony that Plaintiff can perform those occupations has so no evidentiary value" because the ALJ did not include all of Plaintiff's relevant limitations and restrictions in his hypothetical questions. *Id.* at 20. As such, she argues, "that decision is not based on substantial evidence." ECF 8 at 20.

**A. Whether substantial evidence supports the ALJ's finding that Dr. Laura Schaben's opinion was unpersuasive**

### 1. Legal Standards

Plaintiff filed her application for benefits on August 24, 2018. AR 152. For claims filed on or after March 27, 2017, newly promulgated regulations govern how an ALJ must weigh medical opinion evidence.[2] Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c. Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b) (DIB), § 416.920c(a)-(b) (SSI). To that end, there is no longer any inherent extra weight given to the opinions of treating physicians. Instead, the ALJ focuses primarily on "supportability and "consistency" of the opinions, followed by additional sub-factors. *Id*. Although one of the sub-factors involves the treatment relationship, the overall framework gives this relationship much less credence. *See* 20 C.F.R. § 404.1520c(c)(3).

This lack of deference to treating physicians differs from longstanding Ninth Circuit precedent regarding rejection of medical evidence. The Ninth Circuit traditionally required the ALJ to articulate "clear and convincing reasons" in order to "reject the treating doctor's ultimate conclusions." *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) (quotation marks omitted). If the treating doctor's opinion was contradicted by another doctor, the ALJ needed to provide "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id*. If the treating doctor's opinion was not contradicted by another doctor, the ALJ could reject it "only for clear and convincing reasons." *Id*.

---

[2] Both parties agree that the new regulations, subject to the arguments discussed in text, apply in this case. ECF 9 at 3–4; ECF 10 at 2.

The newly promulgated regulations apply here. Plaintiff argues that the new regulations do not apply because the Ninth Circuit's precedent "was not, and never has been, dependent upon agency regulations. The Ninth Circuit's rule is therefore unchanged by any change in agency regulations." ECF 10 at 2. However, the Social Security Act grants the agency broad authority to adopt rules regarding "proofs and evidence," and to change its policy. 42 U.S.C. § 405(a). Where the relevant statute confers such authority upon an agency, prior precedent must yield in the face of new, permissible regulations. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). As such, the 2017 regulations apply here and displace any case law precedent to the extent required to do so.

The new regulations appear intended to reorient how reviewing courts evaluate the ALJs' decisions: "Courts reviewing claims under our [former] rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5853. However, it may be the case that the new regulations do not change much in this Circuit regarding the ALJ's consideration of medical evidence. ALJs must still "articulate how persuasive [they] find medical opinions" and "explain how [they] considered the supportability and consistency factors. At the least, this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion." *Patricia F. v. Saul*, C19-5590, 2020 WL 1812233, at *4 (W.D. Wash. Apr. 9, 2020) (citations omitted).

2.  **Analysis**

Dr. Schaben provided a statement in December 2018 which described Plaintiff's "ongoing fatigue with sleeping more than 12 hours nightly, issues with cognitive function including focus, attention, and memory, and urinary incontinence." AR 22, 726.

In June 2019, Dr. Schaben completed a form provided by Plaintiff's attorney. "Pertinent comments included that the 'mild cognitive impairment' as identified by Dr. Trueblood was 'a disabling degree of impairment and that the claimant would be incapable of performing even simple routine tasks over a normal workday with reduced attention, concentration, and endurance." AR 22, 766–68.

In another statement, Dr. Schaben "indicated the claimant had poor memory, sleep and mood disturbance, personality change, loss of intellectual ability of 15 IQ points or more, recurrent panic attacks, anhedonia, difficulty thinking/concentrating, time or place disorientation, social withdrawal, decreased energy, and blunt, flat, or inappropriate affect." AR 22, 771–75. Regarding Plaintiff's ability to work, Dr. Schaben wrote that she expected Plaintiff to have more than three work absences monthly, that Plaintiff had "marked" or "moderate" limitations in multiple areas of work-related functioning. *Id.*

Plaintiff argues that the ALJ "improperly rejected Dr. Schaben's opinions in the absence of clear and convincing reasons" and that the Court "should credit this treating doctor's opinions as a matter of law." ECF 8 at 16. As explained above, the governing standard now, per the 2017 regulations, is whether the ALJ articulated "how persuasive" he found each medical opinion. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions" but does not need to "explain how [he] considered" the other relevant factors. *Id.* at (b)(2). He also does not

need to "articulate how [he] considered each medical opinion" provided from each source individually. *Id.* at (b)(1).

The ALJ found Dr. Schaben's opinions unpersuasive. AR 22. He stated that "Dr. Schaben concluded the condition is 'disabling' but without performing any additional testing. Inability to perform even simple, routine tasks for a full workday is inconsistent with the objective test results." *Id*. These objective results included: (1) the "mild to moderate" limitations assessed by Dr. Trueblood on December 27, 2017, (2) "Dr. Whitehead's testing" on November 13, 2018, which "continued to show functioning in the average range," and (3) a treating psychologist's statement on May 8, 2019, that "thought processes and range of affect were within normal limits." AR 22–23; *see also* AR 30 (providing dates of examinations); AR 778-80 (treating psychologist's report).

The ALJ also pointed to state agency non-examining medical consultants' conclusions in November 2018 and January 2019 that Plaintiff "could perform a range of light exertion." AR 23. Based on all of this medical evidence, the ALJ concluded that "to the extent the claimant has any intermittent weakness, slight issues with coordination, or other symptomatology associated with multiple sclerosis, the findings have been mild and therefore would be accommodated by the residual functional capacity limiting exertion and performance of postural activities." *Id*. Plaintiff "had an acute onset of symptoms in September 2017, [but] she also experienced great improvements and stability with treatment." *Id.*

The ALJ properly relied upon supportability and consistency in considering Dr. Schaben's opinions. He explained that other medical opinions and objective evidence were consistent among themselves in finding that Plaintiff suffers mild to moderate impairments, and

that these did not support and were not consistent with Dr. Schaben's opinion, which found

disabling impairment. AR 22–23.

Plaintiff argues that "Dr. Schaben was in the unique position of following Plaintiff's

disease course," while the other medical evaluations only reveal Plaintiff's ability to "complete []

one-time testing." ECF 8 at 14–15. Plaintiff also notes that Dr. Schaben "may not have been the

one to perform the specific cognitive testing done by Dr. Trueblood and Dr. Whitehead, but Dr.

Schaben did review the results." ECF 8 at 14. Plaintiff further argues that Dr. Schaben "did

conduct her own testing of Plaintiff's neurological functioning at every office visit, noting

abnormalities in Plaintiff's reflexes, sensation, gait, and responses to questions." *Id.*

Under the new regulations, the ALJ is "not required to explain how he considered"

various factors such as length of the treatment relationship, frequency of examinations, and

examining relationship. *Patricia F.*, 2020 WL 1812233, at *5. Even considering the length of Dr.

Schaben's treating relationship, the argument that during Dr. Schaben's examinations Plaintiff's

condition seemed disabling while during the examinations of multiple other medical

professionals it did not seems strained. The ALJ detailed how five other medical examinations

are inconsistent with and do not support Dr. Schaben's opinion, satisfying his obligation under

the 2017 regulations. AR 22–23.

The ALJ also takes issue with Dr. Schaben's conclusion that Plaintiff experienced a "loss

of intellectual ability of 15 IQ points or more." AR 22. He states,

> Dr. Whitehead's testing about a year later continued to show functioning in the average
> range and there is no indication that the claimant did experience a 15 point drop in IQ.
> The observations of a treating psychologist include some passing 'word finding'
> difficulty, but thought processes and range of affect were within normal limits. This is not
> consistent with the debilitating level of function asserted by Dr. Schaben.

AR 22–23 (internal citations omitted). On appeal, Plaintiff admits that "there are no IQ tests in

the record from" before Plaintiff's onset date, but it is possible Plaintiff lost 15 IQ points given

her "high level of professional achievement before she got sick." ECF 8 at 15. This Court does

not find the IQ issue fruitful, as Plaintiff admits there is no prior IQ test with which to compare,

and the ALJ's main issue with Dr. Schaben's testimony was her assertion that Plaintiff's

condition is "debilitating," which is inconsistent with objective medical examinations that found

Plaintiff's processing to be "average" and "normal." AR 22–23. Regardless of the IQ speculation

from all involved, the ALJ properly accounted for the required consistency and supportability

factors in his evaluation of Dr. Schaben's testimony, and his conclusion that her testimony is

unpersuasive is supported by substantial evidence.

Plaintiff offers a rational, alternative interpretation of the medical record, including

Plaintiff's attempt to return to work and her results at various evaluations. But the ALJ's

interpretation is also rational and supported by substantial evidence, including Plaintiff's

improvement through years of treatment. "If the evidence can support either outcome, the court

may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (quotation

omitted); *see also Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)

("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's

conclusion that must be upheld."). Because the ALJ's evaluation of the persuasiveness of Dr.

Schaben's medical opinion was supported by substantial evidence in the record, this Court

concludes that he did not err in that evaluation.

## B.  Whether the ALJ reasonably discounted Plaintiff's testimony

### 1.  Legal Standards

There is a two-step process for evaluating a claimant's testimony about the severity and

limiting effect of his or her symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345–46).

The ALJ's evaluation of a claimant's subjective symptom testimony may be upheld overall even if not all of the ALJ's reasons for rejecting the testimony are upheld. *See Batson*, 359 F.3d at 1197. However, the ALJ may not reject testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2.  Analysis

Plaintiff testified at the hearing regarding the physical and mental effects of multiple sclerosis. AR 48-57, 68. The ALJ summarized Plaintiff's testimony, noting that she discussed

memory problems, limited ability to do housework, struggles with fine motor movements, left

hand numbness, walking slowly and dragging her left foot, using a handrail for stairs, and

sleeping an uninterrupted 14 to 16 hours nightly while still napping and "feel[ing] tired all the

time." AR 20.

The ALJ stated that "claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record." AR 21. He asserts that Plaintiff's statements "are inconsistent with

an inability to sustain work activity." *Id.*

The ALJ points out that Plaintiff's testimony of her limited household activities

"conflict[] with her statements during the recent consultative examination." AR 20. He also

states that her husband's statements regarding her limited household activities "is inconsistent

with the claimant's self-report to Dr. Whitehead [on November 13, 2018] concerning finances

and chores, as well as a treatment note in August 2018 where the claimant reported hiking, even

if she had some reaction to heat, and that she was able to exercise for one to one and a half hours

'without difficulty.'" AR 21; *see also* AR 717 (providing date of Dr. Whitehead's examination).

The ALJ also discusses Plaintiff's treatment and improvement over time, explaining that

Plaintiff underwent hospitalization shortly after onset and that she "underwent inpatient

rehabilitation and plasmapheresis. While she initially had significant deficits in mobility and

some issues with speech and thought processes, much of this has resolved with treatment and

time." AR 21. He noted her improved ability to walk, her "overall good stability without an

assistive device" as observed by Dr. Schaben, her "only occasional" incontinence issues "in early

2018," and her testimony at the hearing stating that "a Botox injection has relieved

incontinence." *Id.* The ALJ stated that "[r]eports about sleep habits varied from 12 to 16 hours a

night" and that "treating sources did not observe significant issues with somnolence during appointments nor are there reports of actual inability to stay awake." AR 21–22.

In sum, the ALJ provided "specific, clear and convincing reasons" for concluding that Plaintiff's testimony was inconsistent with the record. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). He discussed inconsistencies between Plaintiff's own statements as to her ability to perform daily activities. Such inconsistencies are an important factor when weighing the veracity of a claimant's allegations. SSR 16-3p, 2016 WL 1119029, at *8 (Mar. 16, 2016). While Plaintiff argues that such daily activities only show that she "is able to perform a task here and there around the house," ECF 10 at 7, the ALJ went on to discuss the medical evidence as well. He supported his conclusion regarding Plaintiff's claim to have debilitating cognitive defects by discussing Dr. Trueblood's finding of only a "mild cognitive impairment," Dr. Whitehead's testing which "continued to show functioning in the average range," and a treating psychologist's conclusion that "thought processes and range of affect were within normal limits." AR 22–23. He also properly considered that Plaintiff's condition improved with treatment. *See Morgan*, 169 F.3d at 599–600. As such, his reasoning is "sufficiently specific to permit the reviewing court to conclude that [he] did not arbitrarily discredit the claimant's testimony," and the Court finds that he did not err in discounting Plaintiff's testimony. *Orteza*, 50 F.3d at 75 (citing *Bunnell*, 947 F.2d at 345–46).

## C.  Whether the ALJ reasonably discounted statements from lay witness testimony

### 1.  Legal Standards

The 2017 regulations adjusted requirements for ALJs' consideration of nonmedical evidence as well. "In evaluating the intensity and persistence" of symptoms, the ALJ "consider[s] all of the available evidence," including that from "medical sources and nonmedical sources about how [a claimant's] symptoms affect [her]." 20 C.F.R. §§ 404.1529(c)(1),

416.929(c)(1). However, according to the 2017 regulations, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Consequently, there is an argument that the ALJ is no longer required to provide "arguably germane reasons" for disregarding such statements, as the Ninth Circuit has traditionally required. *See Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). *But see Joseph M. R. v. Comm'r of Soc. Sec.*, 3:18-cv-01779, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (asserting that 20 C.F.R. § 404.1520c(d) "does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those statements").

The Commissioner in this appeal does not address this potential change in law, but he does appear to assume that the "germane" standard continues to apply when evaluating applications filed on or after March 17, 2017. *See* ECF 9 at 16. Without deciding whether the ALJ is required to provide "reasons germane to each [lay] witness" for discounting the evidence provided, *Lewis*, 236 F.3d at 511, this Court applies the "germane" standard and concludes that the ALJ satisfied his obligation under that pre-2017 standard and accordingly satisfied any new, less stringent 2017 standard as well.

### 2. Analysis

#### i. Plaintiff's Husband's Statement

The ALJ considered a statement by Plaintiff's husband from January 2019, in which he claimed that his wife "used to manage our finances, share household chores and grocery shop, but that [he] do[es] all those things now because she cannot." AR 21; AR 184-85. The ALJ stated that this statement "is inconsistent with the claimant's self-report to Dr. Whitehead [on November 13, 2018] concerning finances and chores, as well as a treatment note in August 2018 where the claimant reported hiking, even if she had some reaction to heat, and that she was able

to exercise for one to one and a half hours 'without difficulty.'" *Id.*; *see also* AR 717 (providing date of Dr. Whitehead's examination).

Plaintiff argues that the inconsistencies between Plaintiff's August 2018 treatment note and Plaintiff's report to Dr. Whitehead on November 13, 2018, and her husband's January 2019 statement "are not actually inconsistencies, but represent the changeable nature of Plaintiff's MS." ECF 8 at 19. But Plaintiff does not provide any evidence that suggests that Plaintiff's MS is so changeable as to render a November 2018 statement irrelevant in considering a January 2019 statement. Indeed, the ALJ made specific, substantiated findings that Plaintiff's condition *improved* over time. AR 23.

This Court finds that the inconsistencies provided constitute a specific, germane reason for discounting Plaintiff's husband's lay testimony. The ALJ's interpretation of these statements was a reasonable interpretation of the record supported by substantial evidence, and therefore this Court may not substitute its own judgment. *See Tackett*, 180 F.3d at 1098.

### ii. Plaintiff's Former Coworkers' Statements

The ALJ also considered "several third party statements": three statements by former coworkers and one statement by Plaintiff's former employer. AR 21.

Two of the three coworker statements note Plaintiff's "difficulties with memory, focus, and fatigue." *Id*; AR 186; AR 189. The ALJ states that "it is unclear what, if any, amount of contact these [two coworkers] had with the claimant after her separation from work." AR 21. Indeed, both of these statements focus on the witness's perception of Plaintiff during her brief return to work beginning in January 2018. *See* AR 186; AR 189. While one statement contrasts Plaintiff pre-onset with "[w]hen I see [Plaintiff] now," the statement provides no details on how often or for how long these interactions occur. AR 186.

The ALJ notes that a third coworker statement comes from a coworker who "had only two contacts" with Plaintiff "since onset," and that this statement "provides no indication of when" these two contacts were. AR 21; AR 183. The ALJ asserts that if this third coworker's contacts were "in the fall of 2017, it was during the claimant's ongoing recovery from the initial onset of symptoms," before her improvement through treatment. AR 21. The lay witness suggests that she bases her opinion on two interactions after Plaintiff's "hospitalization or rehabilitation," but she does not provide any dates. AR 183.

The ALJ also discounted a July 2018 statement from Plaintiff's employer, the "Head of School" at Cascades Academy, who wrote that "even with reasonable accommodation, [Plaintiff] can no longer perform the essential duties of her job as our business manager." *Id*; AR 170. The employer's statement referred only to the period between January 17, 2018, and July 1, 2018, during which Plaintiff returned to work part-time. AR 170.

This Court notes that the ALJ discounted all four statements on the basis that "the undefined and/or limited nature of contact with the claimant" rendered each statement "of little evidentiary value in assessing the claimant's functioning." AR 21. The ALJ referenced each statement and his basis for discounting it, even though two of the statements were considered together and his conclusion applies to all four statements. The ALJ is not required "to discuss every witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Here, the ALJ satisfied this requirement.

Plaintiff argues that these statements are "of great evidentiary value given that they describe in detail the differences between what Plaintiff was able to do prior to her illness and

what her limitations were after she got sick." ECF 8 at 19. They "show that Plaintiff cannot

sustain full-time work." *Id*. However, the ALJ provided specific, germane reasons for

discounting these statements. The medical evidence shows a dramatic onset in 2017 followed by

gradual improvement. *See, e.g.,* AR 241-42 (report on September 22, 2017, of Plaintiff's

"extensive initial attack of multiple sclerosis versus possibly acute disseminated encephalitis");

AR 359-40 (report on October 8, 2017, that Plaintiff had "[r]apidly progressive severe multiple

sclerosis" but that she is "dramatically better with respect to her leg" and has seen "significant

improvement of her intracranial lesions as well after even just 2 pheresis treatments"); AR 439

(report on March 15, 2018, that Plaintiff "continues to be gradually improving"); AR 778-80

(report on May 8, 2019, that Plaintiff had "normal" speech rate and volume and that "[r]ange of

affect was within normal limits"). Accordingly, coworkers' statements that either do not include

the dates the observations are based on or provide only one or a couple observations provide

limited evidentiary value, as the ALJ specifically noted. It was unclear how frequently these

coworkers interacted with or saw Plaintiff during the relevant period. The ALJ notes that one

coworker stated she saw her only twice. AR 21. The record's lack of evidence "that [a lay

witness] had sufficient contact with [the Plaintiff] during the relevant time to qualify as a

competent lay witness" is a germane reason for discrediting the testimony. *Crane v. Shalala*, 76

F.3d 251, 254 (9th Cir. 1996). Accordingly, the ALJ did not err in discounting each of the four

coworker statements.

Even if the ALJ committed error in discounting any of these statements, such error was

harmless. As a preliminary matter, rather than "silent[ly] disregard [ ] lay testimony about how

an impairment limits a claimant's ability to work," the ALJ "expressly discredited" the

testimony. *Stout v. Comm'r, Social Sec. Admin*., 454 F.3d 1050, 1054, 1055-56 (9th Cir. 2006).

Further, this Court concludes that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056. The lay witnesses only described limitations "already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117. As discussed above, the ALJ properly discounted Plaintiff's own testimony based on inconsistencies in her statements, inconsistencies between her claims and the objective medical evidence, and her improvement over time. Notably, the medical evidence the ALJ used to discount Plaintiff's testimony included late 2018 and early 2019 evaluations. AR 22-23. Each lay witness statement focuses mostly on Plaintiff's brief return to work in early 2018. The employer statement and one coworker statement discuss this period of time exclusively. *See* AR 170 (letter dated July 1, 2018); AR 189. The other two statements, which reference recent interactions with Plaintiff, provide no details about these interactions. *See* AR 183 (noting she has "only seen [Plaintiff] twice since" onset); AR 186. Accordingly, the ALJ properly discounted Plaintiff's testimony and her coworkers' and employer's statements on the grounds of inconsistency with medical evidence and improvement over time. "In all, the ALJ at least noted arguably germane reasons for dismissing" the lay testimony, "even if he did not clearly link his determination to those reasons." *Lewis*, 236 F.3d at 512. Substantial evidence therefore supported the ALJ's decision to discount this lay testimony. *Id.*

**D.  Whether the vocational expert's testimony provided the substantial evidence necessary to support the ALJ's step five finding**

At step five, the ALJ concluded that, "[b]ased on the testimony of the vocational expert" and "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work." AR 25. The ALJ thus found the claimant "not disabled." *Id.*

1.  **Legal Standard**

When an ALJ poses hypothetical questions to the vocational expert, he must "set out *all* the limitations and restrictions of the particular claimant." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Id*. (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)) (internal quotation marks omitted).

2.  **Analysis**

Plaintiff argues that the vocational expert's testimony was of no evidentiary value, and therefore the ALJ's decision is not based on substantial evidence, because the ALJ omitted from his hypothetical Plaintiff's allegations, multiple lay witnesses' testimony, and Dr. Schaben's assessment of limitations. ECF 8 at 20.

This argument repeats summarily the other arguments raised on appeal challenging the ALJ's discrediting of these statements and testimony. As explained above, the ALJ did not err in his evaluation of this evidence. When an ALJ excludes from his hypothetical questions to the vocational expert properly discounted testimony, such instructions are not erroneous. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008).

Because the ALJ did not err in discounting Plaintiff's testimony, the lay witness testimony, and Dr. Schaben's testimony, the hypothetical questions provided to the vocational expert were proper and provided substantial evidence upon which the ALJ reasonably reached his conclusion.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 15th day of October, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge